IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAL FIKTER, | ) | No. CV-F-05-781 REC/SMS |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR PARTIAL SUMMARY |
| Plaintiff, | ) | JUDGMENT (Doc. 16) AND |
| | ) | GRANTING DEFENDANT'S MOTION |
| vs. | ) | FOR PARTIAL SUMMARY JUDGMENT |
| | ) | (Doc. 17) |
| | ) | |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On December 19, 2005, the court heard the parties' cross-motions for partial summary judgment.

Upon due consideration of the record and the arguments of the parties, the court denies plaintiff's motion and grants defendant's motion for the reasons set forth herein.

Plaintiff Cal Fikter has filed a Complaint for Long Term Disability Benefits pursuant to ERISA. The Complaint alleges that plaintiff was employed by Aera Energy Services and was a participant in Aera's long-term disability plan, which is a

1

employee welfare benefit plan within the meaning of Title I of ERISA.  The Complaint alleges that the Plan is administered and insured by defendant Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty).  The Complaint alleges that plaintiff became disabled, that Liberty provided long-term disability benefits under the Plan until June, 2004, that plaintiff received notification from Liberty that Liberty was "unilaterally cancelling such benefits", that following the appeal process, plaintiff retained counsel and commenced this action, and that the decision to deny benefits was "wrongful, unreasonable, irrational, sorely contrary to the evidence [and c]ontrary to the terms of the Plan and contrary to law."  The Complaint prays for a declaration that plaintiff is disabled as defined in the Plan from June of 2004 to the present, for an award of benefits in the amount not paid to plaintiff from June 2004 to the present with interest, and for attorneys' fees incurred in this action.

    Plaintiff and Liberty have filed cross-motions for partial summary judgment.  In support of its motion, Liberty submitted a Statement of Undisputed Material Facts.  Plaintiff does not dispute those facts although plaintiff contests certain inferences drawn from the undisputed facts.  The issue in these cross-motions is the appropriate standard of review to be utilized by this court in resolving plaintiff's Complaint. Plaintiff contends that the standard of review is "de novo" while Liberty argues that the standard of review is "abuse of

discretion."

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan does grant such discretion, the court applies the abuse of discretion standard of review. Lamantia v. Voluntary Plan Administrators, 401 F.3d 1114, 1122 (9th Cir. 2005).

Liberty bears the initial burden to show that the Plan gives it discretionary authority in order to get any judicial deference to its decision. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir.), cert. denied, 528 U.S. 964 (1999). "[U]nless plan documents unambiguously say in sum or substance that the Plan Administrator has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo." Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000).

Liberty has carried this burden. The Ninth Circuit held in McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (9th Cir. 2000) that a plan which gave the administrator "sole discretion to interpret the terms of the Plan" and whose interpretation "shall be conclusive and binding" conferred discretion sufficient to overcome the presumption in favor of de novo review. In Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 & n.1 (9th Cir. 1999),

3

1 the Ninth Circuit held that Plan language that "we have full and
2 exclusive authority to ... interpret the Group Policy and resolve
3 all questions arising in the ... interpretation and application
4 of the Group Policy" along with a provision that "any decision we
5 make in the exercise of our authority is conclusive and binding"
6 clearly conferred discretion on the plan administrator to
7 determine whether a claimant is disabled.  See also Abatie v.
8 Alta Health & Life Ins. Co., 421 F.3d 1053, 1059-1060 (9th Cir.
9 2005)(holding plan provisions granting to the administrator
10 exclusive "responsibility for full and final" "determinations of
11 eligibility for benefits; interpretation of terms; determination
12 of claims; and appeals of claims" conferred discretion); Bergt v.
13 Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139,
14 1142 (9th Cir. 2002); see also Sabatino v. Liberty Life Assurance
15 Co. of Boston, 286 F.Supp.2d 1222, 1229 (N.D.Cal. 2003)(construed
16 the identical Plan provisions as granting Liberty the discretion
17 to interpret the policy and determine eligibility for benefits).
18      In arguing that the language in the Plan does not overcome
19 the presumption of de novo review, plaintiff relies on Kearney v.
20 Standard Ins. Co., supra.  In Kearney, the plan provision upon
21 which the administrator relied in arguing that the plan conferred
22 discretion was the word "satisfactory" in the requirement in the
23 insuring clause that a claimant provide "satisfactory written
24 proof" of disability.  The relevant plan provision stated:
25           Part 6.  LONG TERM DISABILITY INSURING CLAUSE
26           Subject to all the terms of the GROUP POLICY,

4

> STANDARD will pay the LTD BENEFIT described in Part 8 upon receipt of satisfactory written proof that you have become DISABLED while insured under the GROUP POLICY.

The Ninth Circuit ruled that the phrase "will pay the LTD BENEFIT described in Part 8 upon written receipt of satisfactory written proof that you have become DISABLED" is ambiguous, holding in pertinent part:

> ... We cannot conclude that Standard 'unambiguously retained' discretion by means of the phrase 'satisfactory written proof that you have become disabled,' because the phrase is subject to at least two reasonable constructions to the contrary. Thus we conclude that the district court was correct in its determination that Mr. Kearney's claim should be reviewed de novo.

175 F.3d at 1090.

Plaintiff argues that the language in Section 4 of the Plan ("When Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period"), is similar to the language in <u>Kearney</u> and should be found to be ambiguous by this court. Plaintiff argues that the language in Section 7 of the Plan ("Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding"), is "contradictory to the plain language of the earlier section, with such ambiguity to be

5

resolved against Liberty."

Plaintiff's reliance on Kearney is without merit.  The plan involved in Kearney did not contain any language remotely similar to that in Section 7 of the Plan before the court.  As noted above, there are a number of decisions from the Ninth Circuit ruling that language similar to that set forth in Section 7 of Liberty's plan suffices to overcome the presumption of de novo review.

Plaintiff further argues that a "less deferential" abuse of discretion standard should be applied because an apparent conflict of interest is present because Liberty both issued and administered the Plan.

In Firestone, supra, 489 U.S. at 115, the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."  In Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317 (9th Cir. 1995), the Ninth Circuit explained that the statement in Firestone has been interpreted "to mean that we apply 'heightened scrutiny' where the plan administrator has a conflict of interest by virtue of its economic stake in the benefit decisions which it makes."  Id. at 1322.  Atwood further explained:

> The 'less deferential' standard under which we review apparently conflicted fiduciaries has two steps.  First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere

6

> fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary *has* made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have created a breach of fiduciary duty ....
>
> Under the common law of trusts, any action taken by a trustee in violation of a fiduciary obligation is presumptively void ... Where the affected beneficiary has come forward with material evidence of a violation of the administrator's fiduciary obligation, we should not defer to the administrator's presumptively void decision. In that circumstance, the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits. If the plan cannot carry that burden, we will review the decision *de novo*, without deference to the administrator's tainted exercise of discretion.

45 F.3d at 1323. As explained in <u>Firestone v. Acuson Corporation Long Term Disability Plan</u>, 326 F.Supp.2d 1040, 1052 (N.D.Cal. 2004):

> The Ninth Circuit has never explicitly defined the parameters or contours of what might suffice to constitute a breach of fiduciary duty in this context. However, when evaluating the possibility of such a breach, that court has appeared to focus upon procedural irregularities or structural inconsistencies within the plan administrator's decision-making process, rather than the substantive accuracy of the administrator's decision-making. Although it does not claim to be offering an exclusive list of possibilities, the Ninth Circuit has stated that 'material, probative evidence [of a breach of fiduciary duty] may consist of inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or

7

>procedural irregularities in the processing of the beneficiaries' claims.' *Nord v. Black & Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004) ...; *see also Lang*, 125 F.3d at 977 (insurance company assumed inconsistent positions regarding showing beneficiary must make in order to qualify for benefits); *Tremain*, 196 F.3d at 977 (insurance company applied varying and inconsistent definitions of disability and failed to justify its determination); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir. 1999)(plan administrator 'failed to follow its internal procedure;' 'provided Friedrich with insufficient notice of the denial of his claim, an unfair review procedure and inadequate dialogue regarding his claim;' 'administered Friedrich's claim as an adversary;' and 'failed to provide a "full and fair" appeals procedure').

326 F.Supp.2d at 1052.

The court concludes from the record in this action that plaintiff has not provided material, probative evidence tending to show that Liberty's self-interest caused a breach of Liberty's fiduciary duty. Plaintiff relies on <u>Brown v. Blue Cross and Blue Shield of Alabama, Inc.</u>, 898 F.2d 1556 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1040 (1991), wherein the Eleventh Circuit ruled that the beneficiary had demonstrated a conflict of interest when Blue Cross, after initially denying the claim for benefits, reversed that denial after the beneficiary pursued a review. The Eleventh Circuit stated:

>The reversal of the denial of its claim for the first period of hospitalization was based on nothing more that the medical records <u>from that time</u>. Those records should have been part of a good faith determination at the outset. That Blue Cross would reach opposing conclusions on the basis of the same evidence seriously challenges the assumptions upon

8

>  which deference is accorded to Blue Cross'
>  interpretation of the plan.

898 F.2d at 1569.  Relying on Brown, plaintiff contends:

>  In this case, it is undisputed that Liberty
>  provided long-term disability benefits to the
>  Plaintiff from April of 2000 until June of
>  2004.  The only significant event in the
>  intervening period was Liberty's election, in
>  April of 2004, to have the case reviewed for
>  a 'MD consult', in which the Liberty
>  consulting physician suddenly determined that
>  'in spite of multiple orthopedic procedures',
>  plaintiff could sit or stand for various
>  lengths of time and could intermittently type
>  for ten minutes at a time, followed by ten
>  minute breaks (or for 'four hours per day').
>  As a result, in June of 2004, the benefits
>  were cancelled.

Plaintiff further argues that the "decision to request an FCE is the fulcrum point of the defendant's subsequent decision to deny benefits" and that "[a]ll of the defendant's subsequent acts, now for the first time, seem to focus on establishing plaintiff's ability to work ...."  While plaintiff concedes that the medical reports and findings of his treating physicians are not entitled to a "treating physician rule", plaintiff argues that the "underlying facts and circumstances of the defendant's sudden change of heart, in September of 2003, and the subsequent series of generated evaluations, gives rise to an unexplained shift in the 'dynamics of the decision making process', which must be considered by this Court in determining whether a serious conflict exists."

   Plaintiff's reliance on Brown to support his assertion that he has satisfied the Atwood test is unavailing.  The record in

9

this action demonstrates that Liberty's decision to request an FCE and to have all of plaintiff's medical reports and records evaluated by a consulting physician came after Liberty received reports and records not available to it when it made its decisions to grant benefits under the Plan which were inclusive or suggested that plaintiff was not disabled and unable to work in "any occupation."  Liberty's decision to deny benefits was not based, as was the case in Brown, on the same records and reports. As Liberty argues in support of its motion and in opposition to plaintiff's motion, Liberty caused the review of all of plaintiff's various reports and records, sought input from plaintiff, and properly followed all procedural requirements of the Plan.  Therefore, for the reasons argued by Liberty, the court concludes that plaintiff is not entitled to de novo review based on a conflict of interest.

ACCORDINGLY:

1.  Plaintiff's Motion for Partial Summary Judgment is denied.

2.  Defendant's Motion for Partial Summary Judgment is granted.

IT IS SO ORDERED.

**Dated:  December 29, 2005**              /s/ Robert E. Coyle
668554                                     UNITED STATES DISTRICT JUDGE

10